# E. F. FLANERY v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY.[1]

March 14, 1924.

No. 23,811.

**Admission of exhibit containing statement of opinion prejudicial.**

1. The reception of plaintiff's Exhibit A in evidence, as part of the cross-examination of the witness Fitzgerald, was prejudicial error for which a new trial should be had.

**New trial granted because verdict indicated passion and prejudice of jury.**

2. The verdict of $10,000, which the trial court reduced to $6,000, was so large for the injury which plaintiff sustained to his ankle, as to indicate passion and prejudice such as to require a new trial.

Action in the district court for Yellow Medicine county to recover $30,000 for injuries while in defendant's employ. The case was tried before Baker, J., who at the close of the testimony denied defendant's request for a directed verdict, and a jury which returned a verdict for $10,000. Defendant's motion for judgment notwithstanding the verdict was denied; its motion for a new trial was denied if plaintiff consented to remit all damages above $6,000, which consent was given. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Reversed.

*F. W. Root, C. O. Newcomb* and *A. C. Erdall,* for appellant.

*Tom Davis, Ernest A. Michel* and *R. M. Haines,* for respondent.

QUINN, J.

This action is under the Federal Employers Liability Act. It was first brought in McLeod county, then transferred to Pipestone county where, near the close of plaintiff's testimony, it was dismissed without prejudice, upon plaintiff's motion. It was then commenced in Yellow Medicine county and tried at Granite Falls, where plaintiff recovered a verdict of $10,000 for injury to his left foot. Defend-

[1]Reported in 197 N. W. 747.

ant moved for judgment or for a new trial. The court denied the motion for judgment, but granted the motion for a new trial, unless plaintiff consent to a reduction of the verdict to $6,000. The consent was filed and defendant appealed from the order denying its alternative motion.

Prior to the year 1921, plaintiff had lived in the state of Iowa, where he had been a school teacher and a farmer. He moved to South Dakota with his family in the spring of 1921, and began working for the defendant as a section man. He was injured on July 29, 1921, at a point between 2 and 3 miles out from Sioux Falls, while assisting in taking out old ties and replacing them with new. In performing this work, the earth is removed from around the old tie. The spikes are then removed, the tie pulled from under the rail, and a new tie put in its place. In doing this work picks and shovels are used. At the time in question, an old tie had been removed and the men had prepared the trench for a new one.

Three men, Flanery, Murphy and Fitzgerald, were engaged in the work. Flanery and Fitzgerald took a new tie and put one end of it well under the first rail, when the latter stepped aside to get his pick. Plaintiff then requested Murphy, who had a shovel in his hands, to assist him in placing the tie. Murphy immediately went to his assistance, and, turning his back towards plaintiff, struck the corner of his shovel into the tie for the purpose of helping to pull it into place under the rails. Plaintiff was supposed to use his pick in the same manner in order to force the tie into place. Murphy still had his back towards plaintiff who had his pick in the tie ready to pull. Murphy then pulled on the tie, not knowing that plaintiff's foot was in the trench. The tie moved much easier than was expected, and when it came back plaintiff's foot was caught between the end of the tie and the second rail, causing the injury complained of.

The plaintiff testified that, when two men were about to pull or push a tie into place under the rails with their picks and shovels, they usually used the word "heave" or some word of that import, as a signal that they were ready to bring the tie into place. Other witnesses denied that such was the custom. Murphy did not give

any such signal when about to pull the tie at the time it struck plaintiff's foot. He testified that he did not know Flanery's foot was in the trench and that he had his back to Flanery and could not see in what position he was. Flanery testified that when he noticed the tie was binding, he looked down into the trench and saw a stone which might prevent the tie from passing under the rails and into place. He testified that when he noticed the stone he said: "Wait a minute, Murphy, there is a stone here in the trench," and that he then stooped to get the stone, when his foot was struck by the tie. Murphy testified that he did not hear Flanery say: "Wait a minute," or words to that effect, and that he heard nothing whatever said at that time about a stone being in the trench. In his statement given to Mr. McGuire, defendant's claim agent, shortly after the accident, Flanery said nothing about a stone being in the trench, nor about his statement to Murphy: "Wait a minute." But he there stated that: "I don't know whether I would have told Murphy when he was to pull on the tie or not, as I was just ready to pull when I slipped."

He testified upon the trial in Granite Falls to this effect: "I went to pick up the stone and my foot slipped in about the time he jerked on the tie." He also testified that he said to McGuire: "My foot slipped just enough before Murphy pulled the tie back, to get caught". At the trial in Pipestone plaintiff testified in effect that he had his pick in the tie but reached down to pick up a stone; that he first noticed the stone when they were getting ready to pull the tie; that his left foot slipped from the edge of the trench into the groove just before the tie was pulled back.

The assignments of error are many, none of which require extended discussion. We know of no rule of evidence which justifies the reception of Exhibit A as a part of the cross-examination of the witness Fitzgerald. Upon direct examination Fitzgerald had not been interrogated on any matter upon which the contents of the exhibit had any bearing. Upon his direct examination the witness' testimony was confined to his work in assisting the plaintiff in removing the old tie and bringing the new one to the place where it was to be used. When he left the place to get his pick, plaintiff asked

for and procured the assistance of Murphy in placing the tie. When Fitzgerald returned with his pick, the plaintiff had been injured and was sitting on one of the rails. He heard no word spoken by plaintiff to Murphy. There can be no doubt but that the reception of the exhibit was prejudicial to the rights of the appellant. It read as follows:

"I was about five feet from Edward F. Flanery when the accident happened. I did not hear Murphy give any warning when he pulled the tie as he should have done. Murphy is somewhat careless about his work. He gets in a hurry about his work and jerks and pulls things around, which is liable to injure others. Albert Fitzgerald."

The witness was not asked how far he was from plaintiff at the time of the accident, whether any signal was given by either of the men at work, or whether Murphy was a careful or a careless man about his work. Fitzgerald's statement that "Murphy is somewhat careless about his work," would have been incompetent on direct examination. It is a mere statement of opinion, not one of fact. Contradictory statements of a witness, for the purpose of impeachment, must be material to the issue. It is clear that the effect was to place before the jury inadmissible opinion evidence. This was reversible error. 28 R. C. L. p. 634, § 220, 40 Cyc. 2712.

It is strongly urged that the verdict of $10,000, under the circumstances, was the result of passion and prejudice. Dr. Vandermarck examined the plaintiff at Sioux Falls on the day he was injured. He testified that the injury consisted of a fracture of the external maleolus of the left foot, but that the bone was not displaced. The doctor again examined the plaintiff during the trial at Granite Falls and testified that he had completely recovered from his injury. Dr. Yeorg examined plaintiff on November 8, 1921, at Minneapolis, and again in May, 1922, during the trial at Pipestone, and also during the trial at Granite Falls. He testified that the plaintiff had completely recovered from his injury and that an X-ray picture, taken on the day of the accident, showed a fracture, without displacement of the lower end of the fibula or

small bone of the leg—the portion or tip called the external maleolus; also that there was a little arthritis in the left ankle in November, 1921, but that it had entirely disappeared when he examined him at Pipestone and at Granite Falls. Dr. Raven, plaintiff's physician, testified that the injury consisted of a fracture of the external maleolus of the left foot and that the bone had healed in its proper place; that, in May, 1922, there was more of a trace of arthritis than there was when he examined him the first time in September, 1921, at which time an X-ray picture showed a hardening of the arteries; and that, in his opinion, plaintiff would never be able to do section work again.

Plaintiff testified in effect that he was injured on July 29, 1921; that his foot was in a plaster cast for 3 weeks; that he walked on crutches until the middle of December; that after that time he used one crutch for about a month; that from that time on up to the time of the trial, he used a cane; that he could walk a short distance without a cane; that it was about 14 months after his injury before he could do any work, at which time, he commenced working as an elevator operator in a hotel at Sioux Falls at $50 per month, and was so working at the time of the trial; and that at the time of his injury he was receiving from $85 to $90 per month.

The verdict, even as reduced by the trial court, is so large for the injury sustained, that we are forced to the opinion that the jury was governed by passion and prejudice, and did not arrive at the amount of its verdict upon a fair and impartial consideration of the evidence. For the reasons herein stated the defendant is entitled to another trial of all the issues in the case, and it is so ordered.

Reversed.